IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ADA WILSON and THE ESTATE OF JOSEPH WILSON, | ) ) ) | |
| Plaintiff, | ) ) | 8:04CV640 |
| vs. | ) ) | ORDER |
| BEL FURY INVESTMENTS GROUP, LLC (A Nebraska Limited Liability Company) and SCOTT W. BLOEMER, | ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's Motion to Compel Discovery (#19). The materials attached to plaintiff's Brief (#20) demonstrate substantial compliance with NECivR 7.1(i). Defendants have not filed a response in opposition to the motion.

Plaintiff's interrogatories were served on March 4, 2005. Defendant served responses on April 18, 2005, objecting to Interrogatories Nos. 4, 5, 6, 7, 8 and 11 on the ground that the interrogatories sought information "beyond the scope of discoverable information."

## LEGAL ANALYSIS

The scope of discovery in a civil case is limited by Fed. R. Civ. P. 26(b)(1), as follows:

> **In General.** Parties may obtain discovery regarding any matter, not privileged, that is ***relevant to the claim or defense*** of any party.... For good cause, the court may order discovery of any matter ***relevant to the subject matter involved in the action***. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).[1]

(Emphasis added). Discovery rules are to be "broadly and liberally construed" in order to serve the purpose of discovery, which is to provide the parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement. *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992).

### *Claims and Defenses of the Parties*

The complaint alleges that Ada and Joseph Wilson ("Wilsons") purchased their residence at 6225 Elm Street in Omaha, Nebraska in July 1995. Commercial Federal Bank loaned Wilsons the $75,000 purchase price in July 1995, and the loan was secured by a promissory note and deed of trust held against the property. By October 2003, Wilsons had accrued a deficiency on the loan from four missed payments, and Commercial Federal Bank ("Commercial Federal") notified Wilsons that it intended to proceed with a trustee's sale on

---

[1]Rule 26(b)(2) provides:
   **(2) Limitations.** By order, the court may alter the limits in these rules on the number of depositions and interrogatories or the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36. The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that:
   (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
   (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
   (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion [for protective order] under Rule 26(c).

December 30, 2003. At that time, Wilsons had approximately $20,000 equity in the residence.

In November 2003, after notice of the trustee's sale was published, defendant Scott Bloemer contacted Wilsons at their home, representing himself as a "real estate appraiser" retained by Commercial Federal to appraise the Wilson residence for purposes of the trustee's sale. Based on these representations, Wilsons provided financial and personal information to Bloemer. Bloemer, however, had not been retained by Commercial Federal Bank and was not a licensed appraiser.

During the initial and subsequent contacts, Bloemer told Wilsons that he could stop the scheduled trustee's sale by refinancing their loan. During November and December 2003, Bloemer made several telephone calls to Wilsons to discuss refinancing the Commercial Federal loan. Bloemer told Wilsons he was affiliated with Bel Fury Investments Group L.L.C. ("Bel Fury") and that Bel Fury would provide financing to pay off the principle owed to Commercial Federal, as well as accrued and unpaid interest, penalties and fees.

Wilsons met with Bloemer at the offices of Bel Fury on December 29, 2003. At that time, Wilsons understood that Bel Fury would provide financing to refinance the Commercial Federal loan. During this meeting, Wilsons executed the loan documents prepared by the defendants, including a Purchase Agreement and addenda thereto; Warranty Deed; Residential Affidavit; Nebraska Real Estate Commission Seller Property Condition Disclosure Statement; and a Rental Agreement. Plaintiff alleges that, although the

-3-

transaction was a credit transaction, the defendants failed to disclose the terms of the credit, including the amount financed and the interest rate charged.[2]

Pursuant to the Purchase Agreement, Wilsons retained a right to repurchase the residence at the end of each rental term. The price of exercising this option increases by $3,000 at the end of each year and has no limit or ceiling. Since December 29, 2003, the plaintiff has retained possession of the residence and has made regular monthly payments to Bel Fury pursuant to the Rental Agreement. Despite making regular payments, the amount owed to the defendants will increase over time. The complaint also alleges that the defendants failed to timely refinance the Commercial Federal loan and Wilsons remained the debtor on the loan from December 29, 2003 through at least October 1, 2004.

Based on these factual allegations, plaintiff has raised claims (a) for monetary damages under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"); (b) for monetary damages under the Home Ownership and Equity Protection Act, 15 U.S.C. § 1602(aa) ("HOEPA"); (c) for rescission under TILA; (d) for common law fraud; and (e) for common law rescission. Plaintiff also seeks a preliminary injunction prohibiting the

---

[2] The defendants contest this allegation. Exhibits "I" and "J" to the Answer (#5) are copies of statements copied and signed by Ada and Joseph Wilson, each providing:
> I fully understand the transaction I am entering into with Bel Fury Investments Group L.L.C. today is a sale of my property. I will have no further claim on said property except for my option to repurchase by December 28, 2004, for $82,500.00 (EIGHTY-TWO THOUSAND FIVE-HUNDRED DOLLARS) plus $3000.00 (THREE THOUSAND DOLLARS) for each full year, or fraction thereof, past December 28, 2004, required for repurchase.

defendants from taking any action to transfer any interest in the property or to encumber the plaintiff's interest in the property.

### *Plaintiff's Discovery Requests*

The instant dispute concerns plaintiff's Interrogatories Nos. 4, 5, 6, 7, 8 and 11, which requested the following information:

> **INTERROGATORY NO. 4:** Identify, by street address and legal description, all real estate owned by either Bel Fury Investments Group, LLC or Scott Bloemer at any time since January 2003.
>
> **INTERROGATORY NO. 5:** Identify, by street address, legal description and tenant's name, all real estate owned by Bel Fury Investments Group, LLC or Scott Bloemer that has been rented to a tenant at any time since January, 2003.
>
> **INTERROGATORY NO. 6:** Identify all real estate owned by Bel Fury Investments Group, LLC or Scott Bloemer that is or was occupied by the former owner of that property at any time since January, 2003.
>
> **INTERROGATORY NO. 7:** Identify all properties owned at any time since January, 2003 by Bel Fury Investments Group, LLC, Scott Bloemer, or any business entity in which Mr. Bloemer now holds or has held an equity interest, that have been subject to a right to repurchase by the prior owner.
>
> **INTERROGATORY NO. 8:** Of the properties identified in response to Interrogatory No. 7, how many of those properties have been repurchased by the prior owner?
>
> **INTERROGATORY NO. 11:** With regard to the period from January 1, 2003 to the present, what steps, if any, have Scott Bloemer, Bel Fury Investments Group, LLC, or agents acting on any of their behalf, taken to determine a property owner's ability to repurchase a home that has been transferred to Scott Bloemer, Bel Fury Investments Group, LLC or any related entity?

Defendants initially objected to each of these interrogatories "as beyond the scope of discoverable information." Defense counsel subsequently explained to plaintiff's attorney, by letter dated May 4, 2005, that

> Bel Fury is in the business of buying and selling real estate. One of the means they utilize is their foreclosure assistance program. Under this program they monitor notice of sales in connection with foreclosure proceedings. Bel Fury then contacts homeowners prior to the sale date to offer assistance. It was through this program that Bel Fury and the Wilsons came together. I believe you are entitled to the Bel Fury transactions within its foreclosure assistance programs for the calendar year before and after December 29, 2003. I am prepared to disclose this information subject to any applicable privacy considerations. I do not believe, however, that you are entitled to information concerning all of Bel Fury's real estate transactions in the calendar year before and after the Wilson transaction ....

#20, Exhibit E.

On May 27, 2005, defendant served Amended Answers to the interrogatories, identifying in response to Interrogatory No. 5 the real estate acquired by the defendants in 2003 and 2004 through Bel Fury's "foreclosure assistance program." Plaintiff's Motion to Compel was filed on June 16, 2005.

### *Merits of the Motion to Compel*

Under Rule 26(b)(1), quoted above, the parties may obtain non-privileged discovery "relevant to the claim or defense of any party." Only for good cause shown may the scope of discovery be expanded to include "any matter relevant to the subject matter involved in the action."

Citing *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606 (D. Neb. 2001), plaintiff contends that defendants were required to submit affidavits offering evidence supporting their claims of overbreadth. In *Wagner*, Magistrate Judge Piester observed that the defendant had objected to nearly all of plaintiffs' discovery requests by stating that the requests were overbroad, vague, ambiguous and unduly burdensome, and the objections were not sufficiently specific to allow the court to ascertain the claimed objectionable character of the discovery requests. Accordingly, he ruled that "[u]nless it is obvious from the wording of the request ..., an objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable." 208 F.R.D. at 610 (citing *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa.1980)). In the present case, having considered the discovery requests, the pleadings, and the exhibits to the Motion to Compel, the bases for defendants' overbreadth objections are clear. Since the arguably objectionable character of the discovery requests is apparent, I decline to apply the *Wagner* ruling in this case.

The record shows that the defendants initially produced numerous documents pursuant to Fed. R. Civ. P. 26(a), and have identified the persons who have information concerning Bel Fury's purchase of the Wilson residence and the December 29, 2003 transaction. (*See* #13). There is no indication in the record that any of these individuals have been deposed.

I find that Interrogatory No. 4, which requests that defendants identify "all real estate owned by either Bel Fury Investments Group, LLC or Scott Bloemer at any time since

...

January 2003," is overbroad and is not limited to issues relevant to the claims and defenses raised by the parties. Defendants' objection to Interrogatory No. 4 is sustained.

Regarding Interrogatories Nos. 5, 6, 7 and 8, I find that the interrogatories seek information relevant to the claims and defenses raised by the parties to the extent that they seek information about persons similarly situated to the plaintiff, i.e., persons from whom Bel Fury purchased real estate under similar circumstances. These purchases may not have been made in conjunction with the somewhat mysterious "foreclosure assistance program." Defendants will, therefore, be required to answer or supplement their answers to Interrogatories Nos. 5, 6, 7, and 8.[3]

The court finds that Interrogatory No. 11 seeks information relevant to plaintiff's claims and will require the defendant to answer Interrogatory No. 11.

I further find that the circumstances of this incident would make an award of expenses unjust and decline to award costs or fees to either party. *See* Fed. R. Civ. P. 37(a)(4)(B).

### ORDER

For the reasons discussed above,

**IT IS ORDERED** that plaintiff's Motion to Compel (#19) is granted in part, and denied in part, as follows:

1. The motion is denied as to Interrogatory No. 4.

---

[3] Although it is unclear, defendants' Amended Answer to Interrogatory No. 5 may have been intended as a response to Interrogatories Nos. 6, 7, and 8. *See* #20, Ex. G.

2. The motion is granted, as set forth above, as to Interrogatories Nos. 5, 6, 7, 8 and 11. Defendants shall serve amended answers to Interrogatories Nos. 5, 6, 7, 8 and 11 on or before **July 25, 2005.**

**DATED July 7, 2005.**

                **BY THE COURT:**

                **s/ F.A. Gossett**
                **United States Magistrate Judge**